UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

KATHLEEN QUENZEL EAKER,            )
                                   )
            Plaintiff,             )
                                   )
            v.                     )            Case No.
                                   )
NICHOLAS MOOSHEGIAN, ROBERT J.     )
HERTZ, and MADISON COUNTY,         )            PLAINTIFFS DEMAND
ILLINOIS,                          )            TRIAL BY JURY
                                   )
            Defendants.            )

## COMPLAINT

Now comes the plaintiff, Kathleen Quenzel Eaker (hereinafter "Kathie"), by and through

her attorney, Ellis Law Firm, and for her complaint against the defendants, states as follows:

### Allegations Common To All Counts

1. This Court has jurisdiction over this case alleging violations of 42 U.S.C. §1983

   under federal question jurisdiction pursuant to 28 United States Code §1331 and 28

   United States Code §1343.  Supplemental jurisdiction is present over the state law

   claims pursuant to 28 U.S.C. §1367 as these claims arise out of the same common

   nucleus of operative facts.

2. At all times material hereto, Kathie was a forty-four-year-old resident of Troy,

   Madison County, Illinois.

3. At all times material hereto, the Defendant Nicholas Mooshegian was employed as a

   deputy for the Madison County Sheriff's Department.  At all times material hereto,

   the aforementioned Defendant was acting under color of state law and is being sued

   in his individual capacities.

4.  At all times material hereto, the Defendant Robert J. Hertz was elected and employed as the Sheriff for the Madison County Sheriff's Department. As such, the Defendant had the duty to insure that deputies were properly trained, supervised and disciplined. At all times material hereto, the Defendant was acting under color of state law. He is sued in his individual capacity.

5.  At all times material hereto, the Defendant Madison County was the employer of the other Defendants. The Defendant Madison County was responsible for the hiring, retention, training, supervision and discipline of subordinate officers, including the named Defendants herein.

**Count I**
**Section 1983 Violation of Fourth Amendment:**
**Excessive Force – Defendant Nicholas Mooshegian**

6.  On July 23, 2010, deputy Nicholas Mooshegian (hereinafter "Mooshegian") was given the job of serving a court order, which had been obtained on an *ex parte* basis, on a party to an order of protection case.

7.  The order provided which night the petitioners for the order of protection, Kathie and her husband William Scott Eaker (hereinafter "Scott"), could attend the Troy Homecoming and which night the respondent, William Nicholas Eaker, now known as, William Nicholas Baumgartner, could attend the Homecoming. Specifically, the order stated that the respondent could attend the Homecoming on Friday, July 23, 2010; Kathie and Scott could attend on Saturday, July 24, 2010.

8.  Mooshegian drove to the Eakers home to serve the court order on William Eaker but not Kathie despite the fact that the court order concerned her as well as her husband

Scott.  Mooshegian would not even show Kathie a copy of the court despite the fact that the order should have been served on her as well as Scott.

9.  Mooshegian confused the Kathie's husband Scott with her son, Nicholas Baumgartner.

10. Although Mooshegian asked about Nick, he also referred to Kathie's husband and so Kathie attempted to call Scott.

11. Kathie told Scott to come home because Mooshegian was there to serve a court order on him.

12. Kathie informed Mooshegian that Scott had gone into Troy, Illinois to wash Kathie's Mustang for the homecoming parade, to buy some candy for the Homecoming, and to pick up some magnetic signs for their car.

13. Mooshegian demanded that Kathie make Scott come home immediately.

14. Kathie told Mooshegian that at 4:00 p.m. Scott would be at the Troy, Illinois VFW to help fry fish.  Mooshegian arrived at the Eakers at 3:16 p.m. according to his police report.  She also told Mooshegian what kind of car Scott was driving and the license plate number of the car.  Then she asked Mooshegian if he wanted to wait inside her home for Scott to return because it was hot outside.  Mooshegian declined.

15. Kathie went inside to check on her mentally challenged son and to take a shower for work.

16. While Kathie was showering, Mooshegian knocked on the door and tried to call Kathie on the phone but she could not hear either the knocking or the phone ringing because she was in the shower.

17. After showering, Kathie put on a bath wrap and grabbed a hair brush to brush her hair.  She also picked up a cordless telephone to call the courthouse to learn more about the order Mooshegian was attempting to serve.  Kathie stepped outside her back door and leaned against a hot tub cover while she was on hold with the courthouse. The hot tub is about three feet from the back door to her home.

18. Mooshegian walked around the home to the back yard.  He saw Kathie in her bath wrap leaning against the hot tub.  He walked toward her while saying he was not going to wait around all day while she called her lawyer.

19. He then slapped the phone out of Kathie's hands and placed her under arrest for obstructing the service of process, in violation of the Illinois statute 720 ILCS 5/31-3. When he placed her under arrest, she was wearing only the bath wrap.  She was not wearing any undergarments or shoes.

20. Mooshegian pulled Kathie's hands behind her and handcuffed her.  He applied the handcuffs so tightly that it was extremely painful and caused Kathie's wrists to swell.

21. Kathie told Mooshegian that the handcuffs were too tight and hurting her hands.

22. Mooshegian responded by squeezing the handcuffs tighter and saying that Kathie would be able to figure out where her husband was a little faster now.

23. Mooshegian made Kathie walk barefoot through her rock driveway while he pushed the handcuffs further down onto her hands, injuring her right hand.

24. The handcuffs were so tight that they caused a knot to rise on Kathie's hand and she suffered a contusion to her right hand.

25. The pain was excruciating and Kathie went to Anderson Hospital emergency room upon being released from custody.  Kathie experienced numbness in her right thumb.

The numbness in her right thumb interfered with her waitressing job at Denny's, making it difficult to balance a tray with her right hand.  This made her slower at job and eventually led to her job termination.  Kathie has consulted with a surgeon and surgery will be necessary on her right hand.

26. Pursuant to 720 ILCS 5/7-5, a peace officer is only justified in using force which is reasonably necessary to defend himself, to affect an arrest, or to prevent an escape.

27. Kathie complied with Mooshegian's requests to the best of her ability.  At no time did she resist him in any way or attempt to run away from him or escape his custody.  No force was necessary for Mooshegian to arrest Kathie.

28. As direct and proximate result of the acts and omissions of Mooshegian, Kathie endured serious physical pain and suffering, will need surgery on her right hand, lost wages due to the job termination, incurred medical bills, and incurred attorney fees in violation of her Fourth Amendment right to be free from excessive force.

29. Mooshegian knew or should have known that excessively tightening the handcuffs on Kathie while she was peacefully attempting to comply with his every request, and while she was not breaking any law, violated clearly established Constitutional law and Illinois law on justifiable force that a police officer is permitted to use.

30. At all times material hereto, Mooshegian acted intentionally, willfully and/or with reckless indifference for Kathie's rights.

Wherefore, the plaintiff Kathie Eaker hereby prays for judgment in her favor and against Defendant Nicholas Mooshegian and requests compensatory damages in excess of $75,000.00, punitive damages against Defendant Mooshegian in excess of $75,000.00, reasonable attorney

fees pursuant to 42 U.S.C. § 1988, costs of suit, prejudgment and post judgment interest, and any other relief which this Court deems appropriate.

**Count II**
**Section 1983 Violation of Fourth Amendment:**
**Arrest without Probable Cause – Nicholas Mooshegian**

31. The plaintiff hereby incorporates and realleges paragraphs 1 through 30 by reference thereto as though fully alleged in this paragraph.

32. There is no duty to assist an officer in the service of process.

33. Kathie was apparently arrested for failing to provide enough assistance to the Mooshegian.  See copies of the police report and charge, attached as exhibits A and B respectively, and hereby incorporated by reference thereto.

34. As a direct result of Mooshegian's conduct, Kathie suffered a loss of her liberty and the violation of her Fourth Amendment right to be free from arrest without probable cause.

35. Mooshegian knew or should have known that arresting someone who does nothing more than refuse to do his job for him violated clearly established Constitutional law.

36. At all times material hereto, Mooshegian acted intentionally, willfully and/or with reckless indifference for Kathie's rights.

Wherefore, the plaintiff Kathie Eaker hereby prays for judgment in her favor and against Defendant Nicholas Mooshegian and requests compensatory damages in excess of $75,000.00, punitive damages against Defendant Mooshegian in excess of $75,000.00, reasonable attorney fees pursuant to 42 USC § 1988, costs of suit, prejudgment and post judgment interest, and any other relief which this Court deems appropriate.

**Count III**
**State Law Claim**
**False Arrest – Nicholas Mooshegian**

37. The plaintiff hereby incorporates and realleges paragraphs 1 through 36 by reference thereto as though fully alleged in this paragraph.

38. Upon information and belief, Mooshegian knew that it was his job and not Kathie's to serve the court order on her husband Scott.

39. Mooshegian made no allegation in either his report or his misdemeanor complaint that Kathie provided false information or in any other way did anything which any reasonable person could interpret as her attempting to obstruct his serving Scott with that court order.

40. Mooshegian's only allegation related to the charge of obstructing the service of process was that Kathie failed to do enough to help Mooshegian serve Scott, which was not a crime.

41. Mooshegian lacked probable cause to arrest Kathie.

42. At all times material hereto, Mooshegian acted intentionally, willfully and/or with reckless indifference for Kathie's rights.

Wherefore, the plaintiff Kathie Eaker hereby prays for judgment in her favor and against Defendant Nicholas Mooshegian and requests compensatory damages in excess of $75,000.00, punitive damages against Defendant Mooshegian in excess of $75,000.00, costs of suit, prejudgment and post judgment interest, and any other relief which this Court deems appropriate.

**Count IV**
**State Law Claim**
**Malicious Prosecution – Nicholas Mooshegian**

43. The plaintiff hereby incorporates and realleges paragraphs 1 through 42 by reference thereto as though fully alleged in this paragraph.

44. Mooshegian arrested Kathie and signed the criminal complaint against her.

45. The charge against Kathie was dismissed by the Madison County State Attorney's Office on March 7, 2011. See copy of the order dismissing the charge, attached as exhibit C and hereby incorporated by reference thereto.

46. When Mooshegian arrested Kathie, he still had the court order which had to be served.

47. Upon arresting Kathie, Mooshegian said something like we will see how fast Kathie's husband would show up if Mooshegian arrested her.

48. Upon information and belief, Mooshegian did not arrest Kathie because he believed that she had committed any crime but instead he arrested her because he knew that Scott, her husband, would come to bail her out and Scott could be served then.

49. Mooshegian's unlawful arrest injured Kathie by depriving her of her liberty and by the injuries described in Count I.

50. At all times material hereto, Mooshegian acted intentionally, willfully and/or with reckless indifference for Kathie's rights.

Wherefore, the plaintiff Kathie Eaker hereby prays for judgment in her favor and against Defendant Nicholas Mooshegian and requests compensatory damages in excess of $75,000.00, punitive damages against Defendant Mooshegian in excess of $75,000.00, costs of suit, prejudgment and post judgment interest, and any other relief which this Court deems appropriate.

**Count V**
**State Law Claim**
**Battery – Nicholas Mooshegian**

51. The plaintiff hereby incorporates and realleges paragraphs 1 through 50 by reference thereto as though fully alleged in this paragraph.

52. Kathie never gave her permission to be touched by Mooshegian.

53. Since the arrest was without probable cause and thus unlawful, Mooshegian had no authority to touch Kathie without her consent.  Thus, the unauthorized touching constituted a battery.

Wherefore, the plaintiff Kathie Eaker hereby prays for judgment in her favor and against Defendant Nicholas Mooshegian and requests compensatory damages in excess of $75,000.00, costs of suit, prejudgment and post judgment interest, and any other relief which this Court deems appropriate.

**Count VI**
**State Law Claim**
**Intentional Infliction of Emotional Distress – Nicholas Mooshegian**

54. The plaintiff hereby incorporates and realleges paragraphs 1 through 53 by reference thereto as though fully alleged in this paragraph.

55. At the time of arrest, Kathie was wearing only a bath wrap, which is essentially just a towel, which connected at the top but was open at the bottom front.  Kathie had nothing on underneath the bath wrap.

56. While Kathie was under arrest, her hands were handcuffed behind her back and so she could not close, or hold together, the bath wrap at the bottom.

57. Mooshegian refused to allow Kathie to enter her home to put on any clothing or to speak with her mentally challenged son after he arrested her.

58. Kathie asked Mooshegian if he would step behind her while she attempted to get into his squad car because her bath wrap was opening in the front.

59. Mooshegian refused to step back after Kathie exited his vehicle at the jail.  Instead he stared at her lower body.

60. Mooshegian paraded Kathie past prisoners in holding cells while her bath wrap remained opened at the bottom.

61. Upon her release, Kathie was forced to walk out of the carport and onto a blacktop drive barefoot, in essentially just a towel.

62. Mooshegian's conduct was extreme and outrageous for the following reasons:

   a.  He arrested Kathie for his own convenience because he knew that Scott would come to him and he would not have to continue looking for him;

   b.  He took Kathie from her home after she had told him that she was caring for her mentally challenged son;

   c.  He took her from her home without allowing her to get dressed;

   d.  He did nothing to prevent the humiliation Kathie suffered by being forced to parade in front of people while she was covered in nothing more than a bath wrap which covered her breast only; and

   e.  He did not allow Kathie the smallest measure of dignity by forcing her from her home while she was partially clothed, paraded her in front of prisoners while her bath wrap was opened at the bottom, and put her out on the street in Edwardsville with no more clothes than what she left her home with.

63. Kathie has suffered severe emotional distress as a direct and proximate result of Mooshegian's unlawful arrest and refusing to allow Kathie to put clothes on and the fear of the potential consequences of having to abandon her mentally challenged son. She has been forced to seek psychological and emotional counseling because of this incident.

Wherefore, the plaintiff Kathie Eaker hereby prays for judgment in her favor and against Defendant Nicholas Mooshegian and requests compensatory damages in excess of $75,000.00, costs of suit, prejudgment and post judgment interest, and any other relief which this Court deems appropriate.

**Count VII**
**State Law Claim**
**Negligent Infliction of Emotional Distress – Nicholas Mooshegian**

64. The plaintiff hereby incorporates and realleges paragraphs 1 through 63 by reference thereto as though fully alleged in this paragraph.

65. Mooshegian owed a duty to not inflict emotional distress, or humiliate anyone or to do anything that would strip the person of their dignity.

66. Mooshegian breached that duty by:

    a.   arresting Kathie without any probable cause but merely for his own convenience of forcing Scott to come to him so Mooshegian could serve the court order on him;

    b.   refusing to allow Kathie to put some clothes on before taking her from her home;

    c.  by  taking Kathie from her home when he knew or should have known that

she had a mentally challenged child who would be leave alone in the home;

and

    d.  by parading Kathie in front of people at the jail when she was only partially

clothed.

67. As a direct and proximate result of Mooshegian's breach of duty, Kathie has suffered

severe emotional distress, fear, humiliation, and a loss of dignity.  Kathie has also

been forced to seek psychological and emotional counseling as a direct and proximate

result of this.

Wherefore, the plaintiff Kathie Eaker hereby prays for judgment in her favor and against

Defendant Nicholas Mooshegian and requests compensatory damages in excess of $75,000.00,

costs of suit, prejudgment and post judgment interest, and any other relief which this Court

deems appropriate.

## Count VIII
### Section 1983 Violation of Fourth Amendment:
### Failure to Adequately Supervise and Train – Robert J. Hertz

68. The plaintiff hereby incorporates and realleges paragraphs 1 through 67 by reference

thereto as though fully alleged in this paragraph.

69. Defendant Robert J. Hertz (hereinafter "Hertz") had a duty to make sure that the

Mooshegian had received proper training on the use of handcuffs.

70. Hertz had a duty to make sure that the Mooshegian had received proper training on

allowing a person who posed no threat to Mooshegian to put on clothing.

71. Hertz had a duty to make sure that the Mooshegian had received proper training on escorting female prisoners in Mooshegian's custody when those prisoners are not fully clothed.

72. Kathie's injuries and deprivation of rights were proximately caused by the deliberate indifference of Defendant Hertz in failing to provide adequate training to deputy Mooshegian in the following ways:

    a.   The proper application of handcuffs to avoid injury

    b.   On the law regarding probable cause;

    c.   How to handle female prisoners who are not fully clothed and how those female prisoners who are not fully clothed may suffer severe emotional distress if not handled properly;

    d.   Learning the constitutional rights guaranteed under the Fourth Amendment; and/or

    e.   An assessment that the training provided, if any, was adequately understood as to the proper use of force and in the law regarding probable cause.

73. Upon information and belief, Hertz has been sued before Mooshegian arrested Kathie for Hertz's failure to properly train and supervise his officers

74. Hertz, as the Madison County Sheriff, had the authority to establish official policy with regards to training police officers and disciplining them for failing to follow guidelines for the appropriate use of force in effecting an arrest and for the reasonable care that must be afforded prisoners

75. Hertz's failure to establish a policy to insure the proper training for deputies and to see the deputies are properly disciplined for using excessive force was, in part, a

direct and proximate cause of the plaintiff's injuries which would not have occurred

but for Hertz's failure to provide a municipal policy to establish proper training and

discipline officers for using excessive force and degrading prisoners.

Wherefore, the plaintiff Kathie Eaker hereby prays for judgment in her favor and against

Defendant Hertz and requests compensatory damages in excess of $75,000.00, punitive damages

against Defendant Hertz in excess of $75,000.00, costs of suit, prejudgment and post judgment

interest, and any other relief which this Court deems appropriate.


**Count IX**
**Section 1983 Violation of Fourth Amendment:**
**Custom of Unlawful Activity – Madison County**

76. The plaintiff hereby incorporates and realleges paragraphs 1 through 75 by reference

thereto as though fully alleged in this paragraph.

77. Upon information and belief, the defendant Madison County maintained unwritten

customs and practices which permitted or condoned the arresting someone without

probable cause; arresting someone to force another person to come to the jail to bail

the arrestee out so that service on the person coming to the jail is made easier; failing

to use reasonable care to protect the dignity of female prisoners.

78. As a proximate cause of the unwritten customs and practices mentioned above,

Kathie's Constitutional rights of the plaintiff was violated in the manner previously

described in this complaint.

Wherefore, the plaintiff Kathie Eaker hereby prays for judgment in her favor and against

Defendant Madison County and requests compensatory damages in excess of $75,000.00, costs

of suit, prejudgment and post judgment interest, and any other relief which this Court deems

appropriate.

ELLIS LAW FIRM, LLC


_ s/ Jim Ellis_____
Jim Ellis, #6229208
Attorney for plaintiff

ELLIS LAW FIRM, LLC
P.O. Box 23263
Belleville, IL  62223-0263
(618) 235-1341 telephone
(888) 577-5855 facsimile