UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KATHLEEN QUENZEL EAKER,

Plaintiff,

v.

Case No. 11-cv-00612-JPG-DGW

NICHOLAS MOOSHEGIAN, ROBERT J.
HERTZ, and MADISON COUNTY,
ILLINOIS,

Defendant,

## **MEMORANDUM AND ORDER**

This matter is before the Court on the motion for summary judgment filed by Defendants Nicholas Mooshegian, Robert Hertz, and Madison County, Illinois. (Doc. 9). Plaintiff Kathleen Eaker ("Mrs. Eaker") has responded to the motion. (Doc. 11).

**I.      Summary Judgment Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). In reviewing the motion, the Court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson*, 477 U.S. at 255.

The initial burden for a motion for summary judgment lies with the moving party to identify those portions of the record that show there is no genuine issue of material fact. *Johnton v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir. 1996); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In responding to the motion, the non-moving party then may not rest simply on the pleadings on which she has the burden of proof, but must respond by showing that there is a genuine issue of

material fact. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

A genuine issue of material fact is not merely demonstrated by "some alleged factual dispute between the parties." *Anderson*, 477 U.S. at 247. Only disputes of facts that might affect the outcome of the suit while considering substantive law are sufficient to defeat summary judgment. *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A "fair-minded jury must be able to return a verdict for the [non-moving] party." *Anderson,* 477 U.S. at 252.

**II.    Facts**

The evidence in this case, viewed in the light most favorable to Mrs. Eaker, establishes the following relevant facts.

Mrs. Kathleen Eaker lives in Troy, Illinois, located in Madison County with her husband William Scott Eaker ("Mr. Eaker"). The incident in question began at 3:16 p.m. on July 23, 2010, when Deputy Nicholas Mooshegian of the Madison County Sheriff's Department arrived at the Eaker residence to serve Mr. Eaker with an order of protection. The order specified that Mr. and Mrs. Eaker could not attend the Troy Homecoming celebration on July 23, 2010, but that they would be allowed to attend on July 24, 2010. Unfortunately for Deputy Mooshegian, the Troy Homecoming festivities began on July 23, 2010 at 4:00 p.m. giving him only 45 minutes to serve Mr. Eaker.

Upon arrival at the Eaker residence, Deputy Mooshegian informed Mrs. Eaker that he was there to serve her husband with an order of protection. In response, Mrs. Eaker called her husband and told him to return home because the deputy was there to serve him with an order of protection. Mrs. Eaker then informed Deputy Mooshegian that her husband had gone in to town to wash her Mustang for the Homecoming parade, buy candy, and pick up magnetic signs for the car. Mrs. Eaker

further gave Deputy Mooshegian a description of her Mustang, the car's license plate number, and the specific road Mr. Eaker would be taking to the Troy VFW where Mr. Eaker was to help fry fish at 4:00 p.m. Nevertheless, the deputy demanded that Mr. Eaker return home immediately.

After this initial discussion, Mrs. Eaker told the deputy that she needed to go back inside her home to speak with her mentally challenged son and shower. She asked the deputy if he would like to wait inside until her husband returned home but he declined. While Mrs. Eaker was in the shower, Deputy Mooshegian began calling the house and knocking on the front door, but Mrs. Eaker did not answer. Deputy Mooshegian then called "On Duty Watch Commander Lt. Morris…who advised him to try and attempt to contact her a few more times." (Compl. Attach. 2).

Unaware of the deputy's attempts to contact her, Mrs. Eaker stepped outside the back of the house and called the courthouse to inquire about the order Deputy Mooshegian was attempting to serve. As she was on the phone, Deputy Mooshegian came up behind Mrs. Eaker and said, "he was not going to wait around all day while she called her lawyer." (Compl. ¶ 18). The deputy then slapped the phone out of Mrs. Eaker's hand, placed her under arrest for obstructing the service of process, and said "something like we will see how fast your husband would show up if I arrest you." *Id.* at ¶ 47.

At this time, the only clothes that Mrs. Eaker was wearing was a "bath wrap". (Compl. ¶ 55). This bath wrap was essentially a towel, "which connected at the top but was open at the bottom." *Id.* She had no shoes or undergarments on to protect her from being exposed. Mrs. Eaker requested that she be allowed to go back inside to put on clothes and speak with her son, but Deputy Mooshegian refused. Further, Mrs. Eaker asked Deputy Mooshegian to loosen the handcuffs because they were hurting her hands, but Deputy Mooshegian responded by "squeezing the handcuffs tighter

3

and saying that she would be able to figure out where her husband was a little faster now." *Id*. at ¶ 22.

Once back at the jail, Mrs. Eaker was processed, charged with a misdemeanor for obstructing the service of process and released. However, when the deputy brought Mrs. Eaker into the station, he walked Mrs. Eaker in front of the other inmates while her bath wrap was open at the bottom. After being released, Mrs. Eaker went to the Anderson Hospital emergency room to be treated for a knot and contusion on her right hand.

Mrs. Eaker filed this lawsuit on July 19, 2011. The complaint she filed consists of nine counts. The first seven counts are against Deputy Nicholas Mooshegian and the remaining two are against Sheriff Robert Hertz and Madison County, Illinois. The first two counts brought against Nicholas Mooshegian are brought under 42 U.S.C. §1983 for a violation of Mrs. Eaker's Fourth Amendment rights. These counts consist of the use of excessive force (Count I) and arrest without probable cause (Count II). The remaining five counts are State law claims for false arrest (Count III), malicious prosecution (Count VI), battery (Count V), intentional infliction of emotional distress (Count VI), and negligent infliction of emotional distress (Count VII). The last two counts against Sheriff Hertz and Madison County are also brought under 42 U.S.C. § 1983 for a violation of Mrs. Eaker's Fourth Amendment rights. The claim against Sheriff Robert Hertz is for a failure to adequately supervise and train Deputy Mooshegian (Count VIII), and the claim against Madison County, Illinois is for a custom of unlawful activity (Count IX).

In response, Defendants filed a motion to dismiss on November 8, 2011. However, given that the defendants attached affidavit, this Court converted the motion into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 on November 16, 2011. Mrs. Eaker

4

countered on November 23, 2011 with a memorandum in opposition to Defendants' motion for summary judgment.

## III. Analysis

The Court will first take up the issues concerning Deputy Nicholas Mooshegian. Next, the Court will address the claim against Sheriff Robert Hertz, and lastly the claim against Madison County, Illinois.

### A. Claims Against Deputy Nicholas Mooshegian

Defendant Deputy Mooshegian moves for summary judgment on three grounds, 1) that counts II, III, and IV should be dismissed because Mrs. Eaker has failed to assert a violation of a constitutional right, 2) that Deputy Mooshegian is immune from suit based on qualified immunity, and 3) that he is protected from suit by the Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"). Mrs. Eaker responds asserting that she did assert a violation of a constitutional right because the deputy arrested her without probable cause, which is a violation of her Fourth Amendment rights. Further, Mrs. Eaker argues Deputy Mooshegian is not free from suit under the doctrine of qualified immunity or protected by the Tort Immunity Act. The court will examine each issue in turn.

#### i. A Failure to Assert a Violation of a Constitutional Right.

The first issue is whether a reasonable jury could find that Deputy Nicholas Mooshegian did not have probable cause to arrest Mrs. Eaker for obstructing the service of process. A police officer has probable cause when the facts and circumstances are within the officer's knowledge and are reasonably trustworthy so that a prudent person could believe that the suspect had committed or was committing an offense. *Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996) (quoting *Beck v. Ohio*,

379 U.S. 89, 91 (1964)). "In determining whether [Deputy Mooshegian] had probable cause, the [C]ourt steps into the shoes of a reasonable person in the position of the officer." *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008); *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). The Court must review the facts not as "an omniscient observer would perceive them but...as they would have appeared to a reasonable person in the position of the arresting officer–seeing what he saw, hearing what he heard." *Booker,* 94 F.3d at 1058-9.

Deputy Mooshegian asserts that sufficient probable cause existed to believe that Mrs. Eaker was obstructing the service of process, which violates 720 ILCS 5/31-3. This statute states that "whoever knowingly resists or obstructs the authorized service or execution of any civil or criminal process or order of any court commits a Class B misdemeanor." 720 ILCS 5/31-3. Case law articulates that in order for probable cause to exist that such a violation has been committed, the arrest cannot be premised on mere argument with the officer. *Silverman v. Ballatine*, 694 F.2d 1091, 1095 (7th Cir. 1982). However, it may be premised on a "physical act which may...impede, hinder, interrupt, prevent or delay the performance of the officer's duties." *Id*.

The relevant case law in this case is *Silverman v. Ballatine*, 694 F.2d 1091 (7th Cir. 1982) and *Shipman v. Hamilton*, 520 F.3d 775 (7th Cir. 2008). In *Silverman*, the Seventh Circuit Court of Appeals granted summary judgment for the defendants, the arresting officers, because it believed the officers had sufficient probable cause to arrest the plaintiff's decedent for obstructing the service of process. The officers were attempting to serve the plaintiff's decedent with a writ of replevin for equipment located at his office. *Id*. at 1092. As the officers approached the office, the plaintiff's decedent lied about his identity and retreated back into his office. *Id*. at 1092-3. The plaintiff's decedent then told the officers that they could not take his equipment and threatened them. *Id*. It was

6

at that time the court found the officers had probable cause to believe the plaintiff's decedent was obstructing the service of process. *Id*.

In contrast, in *Shipman*, the court ruled against the arresting officer's motion for summary judgment where they arrested a nurse for obstructing the service of process. *Id*. at 776. The officers were attempting to serve a patient who was located in the nurse's wing. *Id*. The nurse gave them the patient's location but asked them to wait and serve the patient the next day given his condition. *Id*. The nurse then put the officers in touch with her supervisor and went back to work. *Id*. The court of Appeals upheld the district court's opinion that no reasonable officer could have believed he had grounds to arrest the nurse for obstruction of the service of process. *Id*. The court reasoned that after the nurse gave the patient's location there was nothing stopping the officers from completing the service of process. *Id*. Further, the court stated that by going back to work was not an obstruction because she had done all that she could to help the officers, and her failure to do more could not constitute obstruction. *Id*. at 781.

In this case, the two parties base their arguments on two different stories. Deputy Mooshegian argues that Mrs. Eaker's actions are similar to the plaintiff's decedent in *Silverman*. The deputy argues that Mrs. Eaker obstructed the service of process because she 1) refused to instruct her husband to return home immediately, 2) argued with him over the validity of the order, 3) refused to give her husband's exact location, and 4) retreated into her house and refused to answer the door.

However, this Court must take Mrs. Eaker's version of the facts as true. First, Mrs. Eaker alleges in her complaint that she did call her husband and told him to return home immediately. Second, Mrs. Eaker asserts that she told the deputy everything she knew about her husband's

whereabouts. The deputy's argument that Mrs. Eaker had to give her husband's exact location has no precedent. Third, before going back in the house, Mrs. Eaker told the officer why she was going back inside and invited him in to wait for her husband to return home.

All of these actions more resemble *Shipman*. Mrs. Eaker did not give Deputy Mooshegian a false identity, refuse to let Deputy Mooshegian in the house, or threaten him. Mrs. Eaker did all that she could do to help the deputy and her failure to do more cannot constitute obstruction. As a result, taking Mrs. Eaker's version of the facts as true, the Court finds that a reasonable jury could find Deputy Mooshegian did not have probable cause to arrest Mrs. Eaker for obstructing the service of process.

### ii. Qualified Immunity

The next issue is whether Deputy Mooshegian is entitled to qualified immunity on Counts I and II because an officer in his position should not have reasonably known that arresting Mrs. Eaker for obstructing the service of process would violate her constitutional rights. Qualified immunity is a judge-made rule designed to protect "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The protection applies regardless "of a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (citing *Groh v. Ramirez*, 540 U.S. 551, 567 (1978)).

The rule balances the "need to hold public officials accountable when they exercise power irresponsibly [with] the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. However, the Supreme Court has made it clear that "the driving

8

force behind the creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against governmental officials will be resolved prior to discovery." Id.

In *Saucier v. Katz*, 121 U.S. 194 (2001), the Supreme Court mandated a two-part test for resolving qualified immunity claims. *Pearson*, 555 U.S. at 232. First, the court must determine "whether the facts that a plaintiff had alleged or shown make out a violation of a constitutional right." *Id*. If the answer was yes, then the Court must determine whether the right at issue was "clearly established" at the time of the defendant's conduct. However, in *Pearson*, the court did away with the mandated sequence of the test. *Id*. at 236.

In this case, the Court has already determined that Mrs. Eaker has asserted sufficient facts so that a reasonable jury could find that the deputy did not have probable cause to arrest her and violated her constitutional rights under the Fourth Amendment. As a result, the Court must determine whether the right to be free from arrest without probable cause was clearly established at the time of Mrs. Eaker's arrest so that an officer in Deputy Mooshegian's position should have reasonably understood that his actions would violate her constitutional rights.

For a constitutional right to be "clearly established, "[the] right must be sufficiently clear that every reasonable official would have understood that what he was doing violated that right." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012) (citing *Ashcroft v. Al-Kidd*, 131 S.Ct. 2074, 2080 (2011)). In other words, existing precedent must have placed the statutory or constitutional question beyond debate. *Id*. However, the right must be established in a particularized sense "so that the 'contours' of the right are clear to a reasonable official." *Id*. at 2094. This requirement "protects the balance between vindication of constitutional rights and government officials effective performance of their duties by ensuring that officials can reasonably anticipate when their conduct may give rise to

9

liability for damages." *Reichle*, 132 S.Ct. at 2093 (*Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

For example, in *Reichle*, the United States Supreme Court ruled that the officers were entitled to qualified immunity because it was not clearly established "that an arrest supported by probable cause could give rise to a First Amendment violation." *Id.* at 2097. The court found that decision in *Hartman v. Moore*, 547 U.S. 250 could cause a reasonable officer to be confused as to whether the rule in *Hartman* applied to arrests. *Id.* at 2095.  In *Hartman*, the United States Supreme Court ruled "a plaintiff cannot state a claim of retaliatory prosecution in violation of the First Amendment if the charges were supported by probable cause." *Id.* at 2094 (*citing Hartman*, 547 U.S. 250). Following the decision in *Hartman*, different courts of appeals disagreed over whether the decision in *Hartman* extended from retaliatory prosecution to retaliatory arrest. *Id.* at 2096. As a result, the Supreme Court held that because of this disagreement that "it is unfair to subject police to money damages for picking the losing side of the controversy." *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 618 (1999)).

In this case, it was clearly established that the Fourth Amendment protects the right of people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Ashcroft*, 131 S.Ct. at 2080 (citing *Dunaway v. New York*, 442 U.S. 200, 207-208 (1979)). The question is whether it was clearly established, given the facts and the case law, Deputy Mooshegian should have known that arresting Mrs. Eaker would have violated her Fourth Amendment rights.

The relevant case law falls under *Shipman v. Hamilton*, 520 F.3d 775 (2008) and *Silverman v. Ballantine*, 694 F.2d 1091 (1982). In this case, the Court already found above that this case is

controlled by *Shipman* and that no reasonable officer would think Mrs. Eaker's actions constituted obstructing the service of process. Deputy Mooshegian should have known about the decision in *Shipman* and realized that his actions would violate her constitutional rights. Thus, the Court finds that Deputy Mooshegian is not entitled to qualified immunity.

### iii. Local Governmental and Governmental Employees Tort Immunity Act

The third issue is whether a reasonable jury could conclude that Deputy Mooshegian's conduct was willful and wanton, and thus not protected by the Illinois Tort Immunity Act. The Illinois Tort Immunity Act is an Illinois law that "shields public employees from liability for actions committed 'in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.'" *Chelios v. Heavner*, 520 F.3d 678, 692-93 (2008) (745 ILCS10/2-202). The law only applies to the state law claims in this case which consist of Counts III, IV, V, VI, and VII.

Illinois courts "have held that a police officer is not guilty of willful or wanton conduct unless he acted with 'actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others.'" *Id.* at 693 (citing *Breck v. Cortez*, 490 N.E.2d 88 (Ill.App (1986)). The officer's actions must "'consist of more than mere inadvertence, incompetence, or unskillfulness,' [but] it need not be an intentional act." *Id.* (citing *Carter v. Chi. Police Officers*, 165 F.3d 1071, 1071 (7th Cir. 1998)). However, "whether an officer acted in such [a] fashion 'is normally a question of fact to be determined by the jury.'" *Id.* (citing *Stamat v. Merry*, 397 N.E.2d 141 (Ill.App. (1979)).

In *Chelios*, the plaintiff brought three claims against a police officer, the police chief, and the municipality. *Id.* at 682. The first two claims were under federal law for unlawful arrest and

excessive force. *Id*. The third was a state law claim for battery. *Id*. The court of appeals reversed and remanded the District Court's ruling that granted summary judgment for the defendants. *Id*. at 682. In the case, the officer claimed the plaintiff touched his chin and resisted arrest. *Id*. at 683. However, the plaintiff contended he never touched the officer, *Id*. at 686, and the officer arrested him by putting his hands around the plaintiff's neck and spinning him to the ground. *Id*. at 683. The court found that whether the plaintiff touched the officer was a disputed material fact. *Id*. at 693. The court reasoned that if the plaintiff touched the officer's chin, a reasonable jury could not find that his actions were willful and wanton. *Id*. However, without the touching of the chin, the court found that "a jury might well conclude that [the officer's] arrest and tackling of the plaintiff was an intentional and calculated display of force." *Id*. at 693. Therefore, the court found that the officer was not entitled to summary judgment.

In this case, Deputy Mooshegian asserts his actions were not willful and wanton because he had probable cause to believe Mrs. Eaker was obstructing the service of process. However, the Court already found that when taking Mrs. Eaker's facts as true a reasonable jury could find that Deputy Mooshegian did not have probable cause to arrest Mrs. Eaker violating her Fourth Amendment rights. Further, the Court finds that without probable cause a reasonable jury could find that Deputy Mooshegian's actions were an intentional and calculated display of force. As a result, the Court denies Deputy Mooshegian's motion for summary judgment under the Illinois Local Governmental and Governmental Employees Tort Immunity Act for Counts III, IV, V, VI, and VII.

### B. Claims Against Sheriff Robert Hertz

Mrs. Eaker brings Count VIII against Sheriff Robert Hertz under §1983 for a violation of her Fourth Amendment rights. Mrs. Eaker asserts in her complaint that Sheriff Hertz failed to fulfill his duty to properly train Deputy Mooshegian, specifically on the use of handcuffs and how to handle taking into custody a female who is not wearing clothes. Further, Mrs. Eaker asserts that the deprivation of her rights and her injuries were proximately caused by the Sheriff's deliberate indifference in failing to train Deputy Mooshegian. Sheriff Hertz responds by asserting that he is immune from suit under 55 ILCS 5/3-6016 and that Mrs. Eaker has failed to state a claim upon which relief can be granted. Mrs. Eaker responds arguing that Sheriff Hertz is not entitled to summary judgment because 55 ILCS 5/3-6016 is not applicable in this case and inadequate training as a policy or custom can raise a cause of action under §1983. The Court will take each issue in turn.

The first issue here is whether Illinois statute 55 ILCS 5/3-6016 protects Sheriff Hertz from suit for a violation of federal law. The Court believes that it does not. 55 ILCS 5/3-6016 states, "[A] sheriff shall be liable for any neglect or omission of the duties of his or her office, when occasioned by a deputy or auxiliary deputy, in the same manner as for his or her own personal neglect or omission." 55 ILCS 5/3-6016. Sheriff Hertz argues that Mrs. Eaker only asserted that Deputy Mooshegian's actions were willful and wanton. He claims that he can only be sued for negligent actions of his deputies. However, it has long been established that a state statute cannot protect someone from a suit under federal law because of the Supremacy Clause. *Spence v. Staras*, 507 F.2d 544, 557 (7th Cir. 1974) (citing *McLaughlin v. Tilendis*, 398 F.2d 287, 290 (7th Cir. 1968)). A violation of the Constitution cannot be negated by state law. As a result, the Court finds that Sheriff Hertz is not immune from suit under 55 ILCS 5/3-6016.

For the second issue, Sheriff Hertz argues that Mrs. Eaker has not stated a claim upon which relief can be granted. However, he submitted a motion for summary judgment not a motion to dismiss. Thus, the second issue is whether Sheriff Hertz has met his burden in order for the Court to grant summary judgment in his favor. In this case, the Sheriff argues that Mrs. Eaker cannot bring her claim against him because §1983 does not allow actions to be brought against individuals merely for their supervisory roles of others. *Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658, 691 (1978). He argues that Mrs. Eaker is required to show personal involvement by Sheriff Hertz in the decision-making process that amounted to a violation of her rights. Mrs. Eaker responds stating that she is not suing Sheriff Hertz based on *respondent superior* but as the official policy-maker of the Sheriff's office. (Pl.['s] Mem. Resp. to Def[s'] Mot. Summ. J. at 9) (citing *Brown v. Gulash*, No. 07-cv-370-JPG-PMF, 2011 WL 1085637 (S.D. Ill. 2011)) (citing *Browkaw v. Mercer Co.*, 235 F.3d 1000, 1013 (7th Cir. 2000)). She acknowledges that §1983 does not allow liability on the basis of *respondent superior*, but argues that "[a] cause of action brought under §1983 for inadequate training is still good law." (Pl.['s] Mem. Resp. to Def.['s] Mot. Summ. J. at 8).

Thus, the issue becomes whether Sheriff Hertz can be held liable for the actions of his deputies as the official policy-maker of the Sheriff's office. The Supreme Court says that §1983 "imposes liability on a government that, under the color of some official policy, 'causes' an employee to violate another's constitutional rights." *Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658, 692 (1978). These policies can be "(1)...an express policy calling for constitutional violations, (2)...a widespread practice of constitutional violations that [it] was so permanent and well settled as to constitute a custom or usage with the force of law or (3) if a person with final policy making authority for the county caused the constitutional violation." *Id*. at 694.

Here, Mrs. Eaker does not argue that Sheriff Hertz falls under section (1) or (2). She argues that Sheriff Hertz is the official policy-maker of the Sheriff's office, and that he failed to train Deputy Mooshegian. Thus, the deciding issue is whether Sheriff Hertz is considered an official policy-maker of a government office and subject to suit. This Court's precedent shows that is the case. In *Brown*, 2011 WL 1085637 at 17, this Court held that Sheriff Hertz is the "official policy-maker for the Sheriff's office." *Id*. at 17. As a result, Sheriff Hertz fails to meet his burden. The Court acknowledges that Sheriff Hertz correctly argues the law under §1983. However, Sheriff Hertz fails to address Mrs. Eaker's argument that he is liable based on his decisions. Thus, the Court denies Sheriff Hertz's motion for Summary Judgment.

### C. Claims Against Madison County, Illinois

The last issue is whether Mrs. Eaker can prevail on her claim against Madison County, Illinois, for a violation of her Fourth Amendment rights. Mrs. Eaker brings the claim under §1983 for a custom of unlawful activity. Mrs. Eaker asserts that Madison County allegedly maintained unlawful policies that proximately caused her injuries. Madison County responds stating that Mrs. Eaker fails to show a direct causal link between the municipal policy and the alleged constitutional deprivation. *Forman v. Richmond Police Department*, 104 F.3d 950 (7th Cit. 1997). It argues that the Court should grant summary judgment in their favor on the grounds that Mrs. Eaker failed to show "any constitutional deprivation as a result of an official policy or custom of Madison County." (Def.['s] Mot. Summ. J. at 10).

Mrs. Eaker responds making two arguments. First, she points to Deputy Mooshegian's affidavit which shows he was in contact with the Sheriff's office prior to arresting Mrs. Eaker, and that it is "reasonable to assume that whatever [the sheriff's office] told the deputy would reflect the

15

policy of the Sheriff's department." (Pl.['s] Mem. Resp. to Def.[s'] Mot. Summ. J. at 9). Second, she cites *Brown*, 2011 WL 1085637 (2011) in support of her argument that Madison County must stay a party in the suit because of their financial interest in the outcome of the litigation.

The first issue to be addressed is whether Mrs. Eaker has shown a direct causal link between a Madison County policy and the deprivation of her Fourth Amendment rights. Madison County is correct in stating that Mrs. Eaker must demonstrate a "direct causal link" between a "municipal policy or custom and the alleged constitutional deprivation." *Forman*, 104 F.3d at 965. In *Monell*, the Supreme Court further laid out that the policy could be "1)...an express policy calling for constitutional violations, 2)...a widespread practice of constitutional violations that [it] was so permanent and well settled as to constitute a custom or usage with the force of law or 3) if a person with final policy making authority for the county caused the constitutional violation. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Brown*, 2011 WL 1085637 at 15.

In this case, Mrs. Eaker does not cite any Madison County policy or that such policy caused her constitutional deprivation. Mrs. Eaker does not cite an express policy or any widespread practice of constitutional violations committed by Madison County. She argues that it is reasonable to assume that the information relayed to Deputy Mooshegian from a senior member of the Sheriff's department on the date of the incident reflected the policy of the County. Thus, the Court must determine whether senior officers of the Sheriff's department are considered final policy-makers for Madison County. The Court finds that they are not. *Brown*, 2011 WL 1085637 at 16.

For example, in *Brown*, a case involving some of the same defendants, this Court found that Sheriff Hertz was not a person with policy-making authority for the County. However, the Court

decided to keep Madison County in the suit because the county "is responsible for paying any judgment against [Sheriff] Hertz or his employees." *Id*. Here, the Court will continue with its precedent from *Brown* and leave Madison County in the suit, but "limits its liability to paying the judgment incurred by those it funds." *Id.* at 16.

## IV. Conclusion

Given the reasons above, the Court denies Defendants' Deputy Nicholas Mooshegian, Sheriff Robert Hertz, and Madison County, Illinois motion for summary judgment. (Doc. 9).

**IT IS SO ORDERED.**
**DATED: August 1, 2012**

                                        s/J. Phil Gilbert
                                        **J. PHIL GILBERT**
                                        **DISTRICT JUDGE**